# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

JASON M. POWELL,

        Petitioner,

vs.

JOHN FAYRAM,

        Respondent.

No. C10-4012-MWB

**REPORT AND RECOMMENDATION
ON PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT TO
28 U.S.C. § 2254**

---

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 22, 2005, Jason Powell was charged in Crawford County, Iowa, District Court with first-degree eluding, second-degree theft, assault on a police officer, and attempted murder. After a jury trial, Powell was convicted on all four charges. He was sentenced to five years in prison on the eluding charge, five years in prison on the theft charge, one year in prison on the assault charge, and twenty-five years in prison on the attempted murder charge, with the sentences to run concurrently. He appealed, and his appeal was referred to the Iowa Court of Appeals, which reversed the convictions on the eluding and theft charges but affirmed the convictions for assault and attempted murder.

Powell then filed an application for post-conviction relief. After a bench trial, the application was denied. Powell appealed, and his appeal was referred to the Iowa Court of Appeals, which affirmed the denial of his PCR application.

On January 29, 2010, Powell filed a *pro se* application for habeas corpus relief in this court under 28 U.S.C. § 2254. Doc. No. 1. The court granted his request for appointment of counsel. Doc. No. 7. On September 8, 2010, Powell filed a brief on the merits. Doc. No. 18. On September 30, 2010, the respondent ("the State") filed its merits brief. Doc. No. 19. On January 10, 2011, the matter was referred to the

undersigned for submission of a report and recommended disposition of the case. Doc. No. 21.

Oral arguments on Powell's application were held on February 18, 2011. Powell appeared by telephone and his attorney, Shelley A. Goff, appeared in person. Thomas W. Andrews appeared by telephone on behalf of the State.[1] The matter now is fully submitted.

The facts of the case were summarized by the Iowa Court of Appeals in its opinion on Powell's direct appeal, *State v. Powell*, 728 N.W.2d 851 (Table), 2007 WL 112890 (Iowa Ct. App. Jan. 18, 2007) ("*Powell I*"). Absent rebuttal by clear and convincing evidence, the court must presume that any factual determinations made by the Iowa courts were correct. 28 U.S.C. § 2254(e)(1); *see Bell v. Norris*, 586 F.3d 624, 630 (8th Cir. 2009) (a federal court must deem factual findings by the state court to be presumptively correct, subject to disturbance only if proven incorrect by clear and convincing evidence). As no such rebuttal has been made, the court adopts the following facts as determined by the Iowa Court of Appeals:

> At approximately 12:30 p.m. on February 12, 2005, Deputy Sheriff Jerrod Henningsen saw Powell driving a white GMC pickup truck. He knew there was a warrant for Powell's arrest and activated his patrol lights to pull him over. Powell continued driving so the deputy radioed for assistance. Officer James Steinkuehler responded to the call and parked his patrol car in Powell's path in an attempt to stop him. Powell stopped, then accelerated rapidly, hit the patrol car, and sped off.
>
> Deputy Henningsen continued his pursuit of Powell, who was exceeding speeds of sixty miles per hour in a twenty-five-miles-per-hour zone. Powell also ran stop signs while being pursued.

---

[1] A draft of the Court's Report and Recommendation was provided to the parties several weeks before the hearing. There are no substantive differences between this Report and Recommendation and the draft.

Sheriff Thomas Hogan was at home when he heard of the chase on his police scanner. Because the chase was heading his way, he decided to place spiked strips known as "stop sticks" on the road in an attempt to puncture and deflate the tires of Powell's vehicle. The sheriff parked his vehicle in the southbound lane of Ridge Road in Denison and put the strip across the northbound lane. Sheriff Hogan activated the warning lights above the windshield and in the grill, and flashed the headlights of his unmarked patrol vehicle. He stood in a residential driveway approximately twelve to fifteen feet away from the passenger side of his vehicle.

The sheriff saw Powell's car approaching and estimated his speed in excess of sixty miles per hour. Before reaching the stop sticks, Powell applied his brakes, veered left, drove over the curb and onto the lawn, accelerated, and drove at Sheriff Hogan. When Powell's vehicle was a few feet away, the sheriff jumped out of the way. Powell came within twelve to eighteen inches of hitting him. He was driving approximately thirty-five miles per hour as he drove by the sheriff.

Powell was eventually arrested. The vehicle he was driving belonged to Roger Slechta. Slechta had not given Powell permission to drive the vehicle.

*Powell I*, 2007 WL 112890 at *1.

In his brief to this court, Powell claims ineffective assistance of trial counsel on four grounds: (1) failure to move for a judgment of acquittal; Doc. No. 18, at 10; (2) failure to move for a change of venue, *id*. at 12; (3) failure to give him correct advice during plea negotiations concerning the time he would have to serve in prison if convicted on the attempted murder charge, *id*. at 15; and (4) failure to retain an expert witness to establish that the brakes on the pickup truck were defective, *id*. at 16.

Crawford County District Court Judge Edward A. Jacobson ruled on these claims as follows:

> Mr. [Peter] Goldsmith [trial counsel] succinctly lays out the history of his representation of Mr. Powell. In [his] response [to Powell's complaint] and in his testimony

Mr. Goldsmith was delicate in his treatment of the issue of the difficulty of dealing with Mr. Powell as a client. Mr. Powell had been charged with multiple crimes on several different dates and Christopher Polking had been appointed to represent him. When Mr. Polking withdrew, Mr. Goldsmith was appointed and appeared on March 14, 2005. All of the evidence in this case, when taken as a whole, points to the likelihood that Powell was extremely difficult to deal with throughout and shows the court that despite the difficulty, Mr. Goldsmith maintained a level, common sense and professional approach during the entire process.

\*   \*   \*

As Mr. Goldsmith points out in his response to the Iowa Supreme Court Attorney Disciplinary Board, Mr. Powell was charged with attempted murder, assault on a police officer, theft of a motor vehicle, eluding in the commission of a felony, theft of a second motor vehicle, theft of a snowmobile, criminal mischief, two counts of burglary and theft in the third degree, constituting a "B" felony, a "C" felony, seven "D" felonies and an aggravated misdemeanor, which had allegedly occurred on several different occasions in 2004 and 2005.

In Exhibit No. 115, Mr. Powell says the following:

Thursday, April 19, 2005

Dear Peter:

After talking to you today and discussing a few things, talking about prison time and so forth, I'm at the conclusion of this.

I believe I am willing to proceed with jury trials in my cases. Whether it be 1 or 20. I never tried to kill Hogan therefore I'm willing to chance whatever.

Therefor I feel a 5 year sentence is all that I'll be facing after I beat the attempted murder charge. But instead of a proposed plea agreement I talked about in my last letter to you in regards to a 6 month jail sentence, considering the county attorney wants "prison time", the only prison time I'm willing to take a plea on

4

would be for a 2 yr sentence of some sort, be willing to clean up any "open" cases I may be involved in – If given immunity from those charges, pay restitution as in attorney fees, court costs, fines (if imposed) the damage to the 2004 Ford Explorer, along w/all my medical expenses which I incurred while I was incarcerated in Crawford County Jail. I am not taking a 5 yr or 10 yr or 25 yr sentence.

I'm willing to roll the dice whether it's advised or not. Ohh and be given time served. Instead of wasting time and peoples money, give me a 2 yr sentence of some kind – interference w/official acts – theft 3rd, elude, attempt to elude – or whatever – you can ship me to Oakdale tomorrow if they would like. I'll sign papers and go – or we're in for the long haul of a lot of jury trials and a lot of spent money and time for close to the same results. If I get screwed and lose then a lot more time and money spent in appeals, because, no plea-bargain – right to appeal.

I guess we'll be waiting to hear from the county attorney.

Thanks, Peter!!

Sincerely, Jason Powell

The court notes the specific language, "I am not taking a 5-year or 10-year or 25-year sentence," and "I'm willing to roll the dice whether its advised or not."

While he claims in his post conviction relief action that Mr. Goldsmith was remiss in advising him, it is clear from his own testimony, from his communications and from the evidence presented by Mr. Goldsmith, that Mr. Powell was simply ignoring the advice that was being given to him.

The court will not belabor the issue on Change of Venue. It is clear that Mr. Goldsmith advised the defendant with regard to the requirements for a change of venue and advised Mr. Powell that he doubted that a Motion for Change

of Venue could be supported or would be successful. That fact is proven out because the testimony indicates that it took only 45 minutes to pick a jury, that the jury was specifically asked repeatedly about issues of being fair and impartial and knowledge of Sheriff Hogan. The jury was also specifically asked about pretrial publicity. In fact, the court called only 30 jurors to fill the 25 seats available before the exercise of preemptory challenges and the seating of an alternate. Certainly no prejudice is shown by virtue of the failure to move for a change of venue by Mr. Goldsmith. There were no motions to exclude jurors for cause that were not granted by Judge Hoffmeyer. In fact, one person who knew the sheriff but indicated that she could be fair and impartial despite that fact, was left on the jury after Mr. Powell was given an opportunity to have her stricken with a preemptory strike and specifically declined to do so, according to Mr. Goldsmith.

* * *

Mr. Powell also complains that Mr. Goldsmith did not hire an expert to testify regarding the condition of the brakes in the truck he was driving at the time he was accused of attempting to run over the Crawford County Sheriff with the vehicle. The court notes that the truck stopped without swerving at the prior stop sign and that, in fact, this was shown by a tape from the pursuing vehicle. There is also testimony that Mr. Powell was accelerating at the time he went by Sheriff Hogan, which would make the braking abilities of the vehicle irrelevant.

Besides that, the only two witnesses who testified about the brakes testified that they were defective. Eye-witnesses testified that the brakes were never applied. A brake expert would have added nothing to the testimony already offered by the defendant and if the State's witnesses were believed the brakes were not involved in the entire incident at all. Under those circumstances certainly no prejudice can be shown by Mr. Goldsmith's supposed failure to retain a brake expert. Additionally, as Mr. Goldsmith testified, there was no evidence contrary to Defendant's contention that the brakes were defective.

\* \* \*

. . . Mr. Powell claims that Mr. Goldsmith failed to inform him that there was a 70 percent mandatory minimum on a 25-year sentence for attempted murder and suggests that he would have changed plea bargain position had he known that fact. While the court believes there is evidence that Mr. Powell did know that there was a 70 percent mandatory minimum, his attitude towards plea bargaining was totally unreasonable and the court concludes it would have made no difference. He thus was not prejudiced by any failure that there may have been.

\* \* \*

Mr. Goldsmith did file post-trial motions, preserved error and two convictions were ultimately overturned by the Iowa Court of Appeals. Mr. Goldsmith testified that he felt the evidence before the jury was sufficient, that a motion for judgment of acquittal would have been fruitless and that he wished to maintain his credibility with the court and the jury at the end of evidence.

There is certainly no evidence that Mr. Powell was damaged by the failure to make the motion, as there is nothing to make the court believe that the motion would have been sustained under the circumstances that existed at the time, and thus the second element necessary for Mr. Powell to prevail, that being that prejudice resulted, is simply not shown anywhere in the file.

\* \* \*

On behalf of Mr. Powell, [PCR counsel] argues that the right to a change of venue upon proof of inability to obtain a fair trial in the county where the indictment is found is within the guarantee of the Sixth and Fourteenth amendments of the United States Constitution, citing *Harnack v. District Court*, 179 N.W.2d 356, 360 (Iowa 1970).

As stated above, the court certainly agrees that the *Harnack* decision and the constitutions of the United States and Iowa apply to change of venue motions "If the court is satisfied from a motion for change of venue on the evidence

introduced in support of the motion that such degree of prejudice exists in the county in which the trial is to be had, that there is a substantial likelihood a fair and impartial trial cannot be preserved. . . ."

The court in looking at the entire record does not believe that evidence that would have been sufficient for the court to grant a change of venue motion existed at the time of trial. Once again as stated above, only 30 jurors were called from the panel to be questioned in order to seat 25. The one juror that allegedly could have been a friend of the attempted murder victim could easily have been removed by the defendant exercising a preemptory challenge and . . . Mr. Powell specifically elected not to remove said juror after discussing it with counsel.

The defendant must show that counsel's performance fell below an objective standard of reasonableness so that counsel failed to fulfill the adversarial role that the Sixth Amendment envisions. *Strickland v. Washington*, 466 U.S. at 693 (1984).

There was only one juror who admitted to having read any news accounts whatsoever of the incidents that led to the attempted murder conviction and that juror was excused for cause. There is simply no evidence that Powell failed to receive a fair trial as a result of the trial being held in Crawford County, Iowa.

While [PCR counsel]'s brief correctly cites multiple decisions directly on point which constitute the law in Iowa relative to change of venue, the acts and circumstances that were present at the time that Mr. Powell's case was tried simply do not support a change of venue under the existing law.

An expert witness would have added nothing to that inquiry, except additional expense and an expert would have added nothing to the brake failure argument, particularly because the eye-witnesses who actually saw the occurrence testified that the defendant was not using the brakes at any rate. One hundred percent of the evidence relative to the car was that the brakes did not work properly and an expert could

have done nothing more than add cumulative testimony to what was already an undisputed fact in the record. Obviously, the jury found that the failure of the brakes was not that reason that Powell's vehicle was aimed at the sheriff, not because they found that the brakes worked properly, but because they found that the defendant did not use the brakes at all.

Thus, even if the court were to find (which the court specifically does not) that Goldsmith breached the duty by failing to further investigate the brake issue or the change of venue issue, there is no showing that the defendant was prejudiced by that failure.

Since the court does find that Mr. Goldsmith fulfilled all of his duties in a professional and workmanlike manner relative to the Powell case, Mr. Powell has failed to prove either of the required elements relative to his claim regarding expert witnesses.

* * *

[PCR counsel] also raises the issue of failing to effectively advise Powell of the mandatory sentence or the forcible felony aspects of attempted murder.

There is evidence in the testimony and exhibits that Mr. Goldsmith did, in fact, advise Mr. Powell relative to the potentiality of a 25-year sentence, the potentiality of minimum sentences and the potentiality of consecutive rather than concurrent sentences.

There is also some evidence in the file that Mr. Goldsmith did not specifically, in writing at least, tell Mr. Powell that if he were convicted he would face a mandatory minimum.

The prejudice that Powell alleges with regard to this supposed failure on Goldsmith's part is that he wold have changed his mind and accepted the plea agreement offered by the State. Perhaps in retrospect at the end of calendar year 2008 that is true. The court is certain that Mr. Powell regrets not being more reasonable in his approach to working out a plea agreement with the county attorney; however, a cursory reading of Exhibit No. 115 indicates that Mr. Powell expected

to walk away from his criminal and financial obligations with immunity for little more than a slap on the wrist, despite the fact that he was charged with a "B" felony, a "C" felony and a myriad of "D" felonies arising out of at least three different incidents.

In all of these matters the burden is on Mr. Powell to prove by a preponderance of the evidence that Mr. Goldsmith breached an essential duty and that Mr. Powell was prejudiced thereby. The court finds that there is no credible evidence of either the breach of essential duty or prejudice to Mr. Powell in anything Mr. Goldsmith did or did not do.

Doc. No. 19-1, pp. 13-25 (Findings of Fact, Conclusions of Law and Order on Application for Post Conviction Relief, No. PCCV035723, at 2-14 (Crawford County Dist. Ct., December 31, 2008)).

In denying Powell's PCR appeal, the Iowa Court of Appeals adopted Judge Jacobson's ruling. *See Powell v. State*, 776 N.W.2d 886 (Table), 2009 WL 3380640 at *1 (Iowa Ct. App. Oct. 21, 2009).

## II. ANALYSIS

The court will discuss the standard of review in this case, and then will address each of Powell's four claims.

### A. Standard of Review

Powell brings this habeas corpus action under 28 U.S.C. § 2254. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973). Section 2254(a) provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on

the ground that he is in custody in violation of the Constitution . . . of the United States." Section 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

There are two categories of cases under section 2254(d)(1) in which a state prisoner may obtain federal habeas relief: (1) where the relevant state-court decision was "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States,*" or (2) where the relevant state-court decision "involved an *unreasonable application* of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000) (quoting 28 U.S.C. § 2254(d)(1) (emphasis added).

A state court "violates the *'contrary to'* clause of section 2254(d)(1) if it 'applies a rule that contradicts the governing law set forth' by the Supreme Court or if the state court 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a [different] result.'" *Flowers v. Norris*, 585 F.3d 413, 416 (8th Cir. 2009) (emphasis added) (citing *Williams*, 529 U.S. at 406, 120 S. Ct. 1495).

A state court can violate the "*unreasonable application*" clause of section 2254(d)(1) in two ways: (a) where "the state court identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (b) where "the State court either unreasonably extends

a legal principle from [Supreme] Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407, 120 S. Ct. 1495. As explained by Judge Bennett in *Jones v. Wilder-Tomlinson*, 577 F. Supp. 2d 1064 (N.D. Iowa 2008), "It is not enough that the state court applied clearly established federal law erroneously or incorrectly - the application must additionally be unreasonable." *Jones*, 577 F. Supp. 2d at 1073 (citing *Williams,* 529 U.S. at 411, 120 S. Ct. 1495; *Bell v. Cone*' 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ("an unreasonable application is different from an incorrect one.")). *See Ringo v. Roper*, 472 F.3d 1001, 1003 (8th Cir. 2007) (same). "Stated differently, a federal court may not grant the petition unless the state court decision, viewed objectively and on the merits, cannot be justified under existing Supreme Court precedent." *Jones*, 577 F. Supp. 2d at 74 (citing *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999)). To be overturned, the state court's application of federal law must have been "objectively unreasonable." *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007) (citing *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005)).

Section 2254(d)(2) is violated if the state court proceedings resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The federal court is to "presume that the state court's findings of fact are correct, and the prisoner has 'the burden of rebutting the presumption of correctness by clear and convincing evidence.'" *Christian v. Dingle*, 577 F.3d 907, 910 (8th Cir. 2009) (citing *Barnett v. Roper*, 541 F.3d 804, 811 (8th Cir. 2008) (quoting 28 U.S.C. § 2254(e)(1)); *see Miller-El v. Dretke*, 545 U.S. 231, 240, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005); *Weaver v. Bowersox*, 241 F.3d 1024, 1029-31 (8th Cir. 2001). A state court decision involves "an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," as required by section 2254(d)(2), only "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not enjoy support in the record."

*Morales v. Ault*, 476 F.3d 545, 550 (8th Cir. 2007); *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (same).

Powell's Sixth Amendment right to counsel was violated if his trial counsel's performance was so inadequate that it resulted in a breakdown of the adversarial process sufficient to undermine confidence in the result of the proceeding. *Bell v. Cone*, 535 U.S. 685, 695, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). Powell's trial counsel's performance was constitutionally deficient only if was objectively unreasonable and resulted in actual prejudice. *Malcom v. Houston*, 518 F.3d 624, 626 (8th Cir.2008). Prejudice exists only if there is a reasonable probability that the outcome would have been different had counsel's performance been adequate. *Id*. There is a strong presumption that counsel's strategic choices were reasonable. *McGurk v. Stenberg*, 163 F.3d 470, 473 (8th Cir.1998).

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court summarized the principles to be applied by courts considering claims of ineffective assistance of counsel. *See Premo v. Moore*, ___ U.S. ___, 131 S. Ct. 733, 737-38 (Jan. 19, 2011) (*Strickland* "provides the standard for inadequate assistance of counsel under the Sixth Amendment"). A petitioner must show not only that his counsel's performance was inadequate, but also that he was prejudiced by the deficient performance. It is not necessary that a court address the performance and prejudice prongs in any particular order, nor must both prongs be addressed if the court determines the petitioner has failed to meet one prong. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. Indeed, the *Strickland* Court noted that "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Tokar v. Bowersox*, 198 F.3d 1039, 1046 (8th Cir. 1999) (citing *Strickland*).

In the present case, the PCR court applied the *Strickland* principles to Powell's claims. Doc. No. 19-1 at 25. Powell makes no claim that the PCR court applied principles contrary to established federal law. At the hearing, Powell and his counsel

clarified that Powell is claiming the PCR court either unreasonably applied the law to the facts or unreasonably determined the facts in light of the evidence. *See* Section 2254(d)(1) & (2). Powell has the burden of establishing the facts necessary to support his claims by clear and convincing evidence. *See Forsyth v. Ault*, 537 F.3d 887, 890 (8th Cir. 2008) (quoting 28 U.S.C. § 2254(e)).

### 1. Was trial counsel ineffective in not moving for a judgment of acquittal?

Powell claims his trial counsel was ineffective in not moving for a judgment of acquittal on the attempted murder charge. He claims such a motion should have been granted because, as he testified at the PCR hearing, he did not intend to kill anyone that day. Doc. No. 18-1, PCR Transcript, at 13-14. Under Iowa law, a defendant's motion for judgment of acquittal may be denied if the record contains substantial evidence to support the defendant's conviction. *State v. Westeen*, 591 N.W.2d 203, 206 (Iowa 1999).

Powell's trial counsel testified at the PCR hearing as follows regarding his reason for not filing a motion for judgment of acquittal:

> There is two things. First, I didn't think that was a winning argument or even a close to winning argument. As I understand it, the claims that I should have argued were based on intent. And intent is, I understand, very difficult. But it's also difficult to show lack of intent to meet the standard for that motion. And his intent could have been inferred by the jury just from his actions. So I felt there was clearly enough evidence to defeat that motion at that point. And so I didn't.
>
> And the second reason was because I wanted to retain credibility with the court and try and win the motions that I thought were winnable.

Doc. No. 18-1, PCR transcript, at 48.

The PCR court ruled on this claim as follows: "There is certainly no evidence that Mr. Powell was damaged by the failure to make the motion, as there is nothing to make the court believe that the motion would have been sustained under the circumstances that

existed at the time, and thus the second element necessary for Mr. Powell to prevail, that being that prejudice resulted, is simply not shown anywhere in the file." Doc. No. 19-1 at 23.

To prevail on this claim, Powell would have to show either that this ruling was based on an unreasonable determination of the facts in light of the evidence, or it involved an unreasonable application of the law to the facts. He has done neither.

There is no evidence in the record to support a claim that a motion for judgment of acquittal on the attempted murder charge would have been granted. *A fortiori*, the record does not even suggest that the PCR court was objectively unreasonable in finding no prejudice on this claim.

### 2.    Was trial counsel ineffective in not moving for a change of venue?

Powell claims his trial counsel was ineffective in not moving for a change of venue. He claims such a motion should have been filed, but nowhere does he even allege that such a motion would have been granted.

The PCR court ruled on this claim as follows: "The court in looking at the entire record does not believe that evidence that would have been sufficient for the court to grant a change of venue motion existed at the time of trial. . . . [E]ven if the court were to find (which the court specifically does not) that [trial counsel] breached the duty by failing to further investigate . . . the change of venue issue, there is no showing that the defendant was prejudiced by that failure." Doc. No. 18-1 at 24-26. Indeed, the PCR court noted that according to Powell's trial counsel, "the one person who knew the sheriff . . . indicated that she could be fair and impartial despite that fact, [and she] was left on the jury after Mr. Powell was given an opportunity to have her stricken with a preemptory strike and specifically declined to do so[..]" Doc. No. 18-1 at 20.

Again, to prevail on this claim, Powell would have to show either that this ruling was based on an unreasonable determination of the facts in light of the evidence, or it

involved an unreasonable application of the law to the facts. Again, he has made neither of these showings.

There is no evidence in the record to support a claim that a motion for change of venue would have been granted, nor does the record support a claim that the PCR court was objectively unreasonable in finding no prejudice on this claim.

**3.      Was trial counsel ineffective in not giving Powell correct advice during plea negotiations concerning the time he would have to serve in prison if he were convicted on the attempted murder charge?**

Powell claims his trial counsel was ineffective in not giving him correct advice during plea negotiations concerning the time he would have to serve in prison if he were convicted on the attempted murder charge. He claims he would have accepted a plea bargain to a lesser charge if he had known he would have to serve 70 percent of the mandatory twenty-five-year sentence on the charge. Doc. No. 18, p. 16.

The PCR court ruled on this claim as follows: "Mr. Powell claims that [trial counsel] failed to inform him that there was a 70 percent mandatory minimum on a 25-year sentence for attempted murder and suggests that he would have changed plea bargain position had he known that fact. While the court believes there is evidence that Mr. Powell did know that there was a 70 percent mandatory minimum, his attitude towards plea bargaining was totally unreasonable and the court concludes it would have made no difference. He thus was not prejudiced by any failure that there may have been." Doc. No. 19-1 at 21-22.

To prevail on this claim, Powell would have to show either that this ruling was based on an unreasonable determination of the facts in light of the evidence, or it involved an unreasonable application of the law to the facts. He has not made either of these showings.

There is no evidence in the record to support a claim that Powell would have accepted a plea bargain had he been given more information concerning the mandatory

sentence on the attempted murder charge, nor does the record establish that the PCR court was objectively unreasonable in finding no prejudice on this claim.

**4.      *Was trial counsel ineffective in not retaining an expert witness to establish that the brakes on the pickup truck were defective?***

Powell claims his trial counsel was ineffective in not retaining an expert witness to establish that the brakes on the pickup truck were defective.   He claims such evidence would have shown that the brakes on the pickup were faulty, and upon applying the brakes, the pickup would pull to the left, in the direction of where the sheriff was standing. Doc. No. 18, p. 17.

The PCR court ruled on this claim as follows:

> The court notes that the truck stopped without swerving at the prior stop sign and that, in fact, this was shown by a tape from the pursuing vehicle.  There is also testimony that Mr. Powell was accelerating at the time he went by Sheriff Hogan, which would make the braking abilities of the vehicle irrelevant. . . . [A]n expert would have added nothing to the brake failure argument, particularly because the eye-witnesses who actually saw the occurrence testified that the defendant was not using the brakes at any rate.  One hundred percent of the evidence relative to the car was that the brakes did not work properly and an expert could have done nothing more than add cumulative testimony to what was already an undisputed fact in the record.  Obviously, the jury found that the failure of the brakes was not that reason that Powell's vehicle was aimed at the sheriff, not because they found that the brakes worked properly, but because they found that the defendant did not use the brakes at all. . . .  Thus, even if the court were to find (which the court specifically does not) that Goldsmith breached the duty by failing to further investigate the brake issue…, there is no showing that the defendant was prejudiced by that failure.

Doc. No. 19-1 at 20-21, 25-26.

To prevail on this claim, Powell would have to show either that this ruling was based on an unreasonable determination of the facts in light of the evidence, or it involved an unreasonable application of the law to the facts. He has made neither of these showings. *See, e.g., Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 788-92 (Jan. 19, 2011), in which the petitioner made a similar claim regarding his attorney's failure to retain expert witnesses.

There is no evidence in the record to support a claim that testimony of an expert witness that the brakes were defective would have been helpful. Thus, there is no showing of prejudice. There certainly has been no showing that the PCR court was objectively unreasonable in finding no prejudice on this claim.

## III. CONCLUSION

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED**, unless any party files objections[2] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1)(C) and Fed. R. Civ. P. 72(b) within fourteen days of the service of this Report and Recommendation, that Powell's application for a writ of habeas corpus be **denied**.

**IT IS SO ORDERED.**

**DATED** this 18th day of February, 2011.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[2]Objections must specify the parts of the report and recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72.