**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

JASON M. POWELL,

       Petitioner,

vs.

JOHN FAYRAM,

       Respondent.

No. C 10-4012-MWB

**MEMORANDUM OPINION AND**
**ORDER REGARDING REPORT AND**
**RECOMMENDATION ON PETITION**
**FOR WRIT OF HABEAS CORPUS**
**PURSUANT TO 28 U.S.C. § 2254**

---

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      1.  Events giving rise to state charges against Powell . . . . . . . . . 2
      2.  State court proceedings . . . . . . . . . . . . . . . . . . . . . . 4
   B. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      1.  Powell's § 2254 Petition . . . . . . . . . . . . . . . . . . . . . . 9
      2.  The Report And Recommendation . . . . . . . . . . . . . . . . . 10
      3.  Powell's objection . . . . . . . . . . . . . . . . . . . . . . . . . 12

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   A. Standards For Review Of A Report And Recommendation . . . . . . . . 13
   B. Standards For § 2254 Relief . . . . . . . . . . . . . . . . . . . . . . . 16
   C. Powell's Claim Of Bad Advice Regarding Plea Negotiations . . . . . . . 19
      1.  Powell's additional evidence . . . . . . . . . . . . . . . . . . . 20
      2.  Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
          a.  Unreasonable factual determinations . . . . . . . . . . . 22
          b.  Unreasonable application of the law . . . . . . . . . . . 25
   D. Powell's Other Claims . . . . . . . . . . . . . . . . . . . . . . . . . . 28
   E. Certificate Of Appealability . . . . . . . . . . . . . . . . . . . . . . . 29

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Thisis case is before the court on petitioner Jason M. Powell's March 3, 2011, *pro se* Objection (docket no. 27) to Chief United States Magistrate Judge Paul A. Zoss's February 18, 2011, Report And Recommendation On Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (docket no. 26). Judge Zoss recommended that Powell's § 2254 Petition be denied in its entirety. Powell objects only to Judge Zoss's recommended disposition of his claim that his trial counsel was ineffective in not giving him correct advice during plea negotiations about the time that he would have to serve in prison on a mandatory minimum sentence if he were convicted on a state charge of attempted murder.

## I. INTRODUCTION

### A. Factual Background

**1.** **Events giving rise to state charges against Powell**

As Judge Zoss noted in his Report and Recommendation, absent rebuttal by clear and convincing evidence, a federal court hearing a *habeas* petition of a state prisoner, pursuant to 28 U.S.C. § 2254, must presume that any factual determinations made by the state courts were correct. 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting § 2254(e)(1)); *Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011); *Bell v. Norris*, 586 F.3d 624, 630 (8th Cir. 2009). The unrebutted statement by the Iowa Court of Appeals of the factual background to various state charges against Powell is the following:

> At approximately 12:30 p.m. on February 12, 2005, Deputy
> Sheriff Jerrod Henningsen saw Powell driving a white GMC

pickup truck. He knew there was a warrant for Powell's arrest and activated his patrol lights to pull him over. Powell continued driving so the deputy radioed for assistance. Officer James Steinkuehler responded to the call and parked his patrol car in Powell's path in an attempt to stop him. Powell stopped, then accelerated rapidly, hit the patrol car, and sped off.

Deputy Henningsen continued his pursuit of Powell, who was exceeding speeds of sixty miles per hour in a twenty-five-miles-per-hour zone. Powell also ran stop signs while being pursued.

Sheriff Thomas Hogan was at home when he heard of the chase on his police scanner. Because the chase was heading his way, he decided to place spiked strips known as "stop sticks" on the road in an attempt to puncture and deflate the tires of Powell's vehicle. The sheriff parked his vehicle in the southbound lane of Ridge Road in Denison and put the strip across the northbound lane. Sheriff Hogan activated the warning lights above the windshield and in the grill, and flashed the headlights of his unmarked patrol vehicle. He stood in a residential driveway approximately twelve to fifteen feet away from the passenger side of his vehicle.

The sheriff saw Powell's car approaching and estimated his speed in excess of sixty miles per hour. Before reaching the stop sticks, Powell applied his brakes, veered left, drove over the curb and onto the lawn, accelerated, and drove at Sheriff Hogan. When Powell's vehicle was a few feet away, the sheriff jumped out of the way. Powell came within twelve to eighteen inches of hitting him. He was driving approximately thirty-five miles per hour as he drove by the sheriff.

Powell was eventually arrested. The vehicle he was driving belonged to Roger Slechta. Slechta had not given Powell permission to drive the vehicle.

*State v. Powell*, 728 N.W.2d 851 (Table), 2007 WL 112890, *1 (Iowa Ct. App. Jan. 18, 2007) (*Powell I*) (ruling on direct appeal).

## 2. *State court proceedings*

As a result of this incident, Powell was charged on February 22, 2005, in Crawford County, Iowa, District Court, with first-degree eluding, second-degree theft, assault on a peace officer, and attempted murder.[1] Powell proceeded to a jury trial on these charges and was convicted on August 29, 2005. He was subsequently sentenced to five years in prison on the eluding charge, five years in prison on the theft charge, one year in prison on the assault charge, and twenty-five years in prison on the attempted murder charge, with all sentences to run concurrently.

On direct appeal, the Iowa Court of Appeals reversed Powell's conviction on the eluding charge and remanded for new trial, reversed the conviction for theft and remanded for entry of judgment of guilty of operating without the owner's consent, but affirmed the conviction for assault on a peace officer. *Powell I*, 2007 WL 112890. Powell's only challenge to his conviction of attempted murder on direct appeal was a claim that his trial counsel had been ineffective for failing to move for judgment of acquittal on that charge, which the Iowa Court of Appeals preserved for post-conviction relief to allow the record to be fully developed. *Id.* at *5.

On January 7, 2009, the Iowa District Court denied Powell's application for post-conviction relief based on various claims of ineffective assistance of counsel. Respondent's Appendix Of Relevant State Court Decisions (State Court Decisions) (docket no. 19-1), 12-26 (Iowa District Court's post-conviction relief ruling). On October 21, 2009, the Iowa Court of Appeals also affirmed that decision, expressly adopting all of the

---

[1]Powell had other charges pending, in other cases, that arose from other circumstances. Those charges are not relevant here.

findings and conclusions of the Iowa District Court. *See Powell v. State*, 776 N.W.2d 886 (Table), 2009 WL 3380640, *1 (Iowa Ct. App. Oct. 21, 2009) (*Powell II*).

One of Powell's claims in his application for state post-conviction relief was a claim that trial counsel failed to advise him concerning the 70 percent mandatory minimum that might be applicable to his attempted murder charge. *See Powell II*, 2009 WL 3380640 (describing the pertinent claim as ineffective assistance of counsel "in failing to advise [Powell] on the mandatory sentence for the attempted murder charge"); State Court Decisions at 18-19 (excerpt from the Iowa District Court's post-conviction relief ruling describing Powell's *pro se* claim to be that trial counsel "failed to inform him that there was a 70 percent mandatory minimum on a 25-year sentence for attempted murder," and noting that counsel "also raises the issue of failing to advise Powell of the mandatory sentence or the forcible felony aspects of attempted murder"). Powell contended that he would have accepted a plea agreement had counsel properly advised him of the potential for such a mandatory minimum sentence. State Court Decisions at 19.

The factual findings of the Iowa courts on this claim for post-conviction relief are the following:

> [A] good discussion of the actions taken by Mr. Goldsmith on behalf of Mr. Powell can be found in Mr. Goldsmith's response to the complaint filed against him with the Iowa Supreme Court Attorney Disciplinary Board. . . .
>
> Mr. Goldsmith succinctly lays out the history of his representation of Mr. Powell. In [his] response [to Powell's complaint] and in his testimony Mr. Goldsmith was delicate in his treatment of the issue of the difficulty of dealing with Mr. Powell as a client. Mr. Powell had been charged with multiple crimes on several different dates and Christopher Polking had been appointed to represent him. When Mr. Polking withdrew, Mr. Goldsmith was appointed and appeared on March 14, 2005. All of the evidence in this case,

when taken as a whole, points to the likelihood that Powell was extremely difficult to deal with throughout and shows the court that despite the difficulty, Mr. Goldsmith maintained a level, common sense and professional approach during the entire process.

* * *

As Mr. Goldsmith points out in his response to the Iowa Supreme Court Attorney Disciplinary Board, Mr. Powell was charged with attempted murder, assault on a police officer, theft of a motor vehicle, eluding in the commission of a felony, theft of a second motor vehicle, theft of a snowmobile, criminal mischief, two counts of burglary and theft in the third degree, constituting a "B" felony, a "C" felony, seven "D" felonies and an aggravated misdemeanor, which had allegedly occurred on several different occasions in 2004 and 2005.

In Exhibit No. 115, Mr. Powell says the following:

Thursday, April 19, 2005

Dear Peter:

After talking to you today and discussing a few things, talking about prison time and so forth, I'm at the conclusion of this.

I believe I am willing to proceed with jury trials in my cases. Whether it be 1 or 20. I never tried to kill Hogan therefore I'm willing to chance whatever.

Therefor[e] I feel a 5 year sentence is all that I'll be facing after I beat the attempted murder charge. But instead of a proposed plea agreement I talked about in my last letter to you in regards to a 6 month jail sentence, considering the county attorney wants "prison time", the only prison time I'm willing to take a plea on would be for a 2 yr sentence of some sort, be willing to clean up any "open" cases I may be involved in – If given immunity from those charges, pay restitution as in attorney fees, court costs, fines (if imposed) the damage to the 2004 Ford Explorer, along w/all my

6

medical expenses which I incurred while I was incarcerated in Crawford County Jail. I am not taking a 5 yr or 10 yr or 25 yr sentence.

I'm willing to roll the dice whether it's advised or not. Ohh [sic] and be given time served. Instead of wasting time and peoples money, give me a 2 yr sentence of some kind – interference w/official acts – theft 3rd, elude, attempt to elude – or whatever – you can ship me to Oakdale tomorrow if they would like. I'll sign papers and go - or we're in for the long haul of a lot of jury trials and a lot of spent money and time for close to the same results. If I get screwed and lose then a lot more time and money spent in appeals, because, no plea bargain – right to appeal.

I guess we'll be waiting to hear from the county attorney.

Thanks, Peter!!
Sincerely, Jason Powell

The court notes the specific language, "I am not taking a 5-year or 10-year or 25-year sentence," and "I'm willing to roll the dice whether its [sic] advised or not."

While he claims in his post conviction relief action that Mr. Goldsmith was remiss in advising him, it is clear from his own testimony, from his communications and from the evidence presented by Mr. Goldsmith, that Mr. Powell was simply ignoring the advice that was being given to him.

State Court Decisions at 13-16.

The Iowa District Court addressed Powell's *pro se* claim for post-conviction relief based on his trial counsel's alleged ineffective assistance with regard to plea negotiations, as follows:

While the court believes there is evidence that Mr. Powell did know that there was a 70 percent mandatory minimum, his

7

attitude towards plea bargaining was totally unreasonable and the court concludes it would have made no difference [whether or not counsel told him about the 70 percent mandatory minimum]. He thus was not prejudiced by any failure that there may have been.

State Court Decisions at 19. The Iowa District Court returned to this claim, as argued by Powell's post-conviction relief counsel, later in its decision:

> There is evidence in the testimony and exhibits that Mr. Goldsmith did, in fact, advise Mr. Powell relative to the potentiality of a 25-year sentence, the potentiality of minimum sentences and the potentiality of consecutive rather than concurrent sentences.
>
> There is also some evidence in the file that Mr. Goldsmith did not specifically, in writing at least, tell Mr. Powell that if he were convicted he would face a mandatory minimum.
>
> The prejudice that Powell alleges with regard to this supposed failure on Goldsmith's part is that he would have changed his mind and accepted the plea agreement offered by the State. Perhaps in retrospect at the end of calendar year 2008 that is true. The court is certain that Mr. Powell regrets not being more reasonable in his approach to working out a plea agreement with the county attorney; however, a cursory reading of Exhibit No. 115 indicates that Mr. Powell expected to walk away from his criminal and financial obligations with immunity or little more than a slap on the wrist, despite the fact that he was charged with a "B" felony, a "C" felony and a myriad of "D" felonies arising out of at least three different incidents.
>
> In all of these matters the burden is on Mr. Powell to prove by a preponderance of the evidence that Mr. Goldsmith breached an essential duty and that Mr. Powell was prejudiced thereby. The court finds that there is no credible evidence of either the breach of essential duty or prejudice to Mr. Powell in anything Mr. Goldsmith did or did not do.

State Court Decisions at 25.

## B. Procedural Background

### 1. Powell's § 2254 Petition

On January 29, 2010, Powell filed in this federal court a *pro se* Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (§ 2254 Petition) (docket no. 1). At Powell's request, the court appointed counsel to represent him in this matter. The respondent submitted relevant state court records on May 28, 2010. Although Powell's appointed counsel requested time to file an amended petition, she later filed a Report Stating No Amended Petition Will Be Filed (docket no. 14) on June 9, 2010. The respondent also filed his Answer (docket no. 15) to Powell's § 2254 Petition on June 9, 2010.

Powell's counsel filed a Memorandum In Support Of Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (Petitioner's Brief) (docket no. 18) on September 8, 2010. Powell's claims for § 2254 relief, as clarified in the brief filed by his counsel, are the following: (1) ineffective assistance of trial counsel in failing to move for a judgment of acquittal, *see* Petitioner's Brief at 10; (2) ineffective assistance of trial counsel in failing to move for a change of venue, *see id.* at 12; (3) ineffective assistance of trial counsel in failing to give him correct advice during plea negotiations concerning the time he would have to serve in prison if convicted on the attempted murder charge, *see id.* at 15; and (4) ineffective assistance of trial counsel in failing to retain an expert witness to establish that the brakes on the pickup truck were defective, *see id.* at 16. The respondent filed his Merits Brief (docket no. 19) on September 30, 2010, disputing all of Powell's claims on the merits, thus apparently conceding that all were properly exhausted.

By Order (docket no. 21), filed January 10, 2011, I referred this action and all motions pending therein to Chief United States Magistrate Judge Paul A. Zoss for recommendation of a disposition of the case. Judge Zoss heard oral arguments on the merits of Powell's § 2254 Petition on February 18, 2011. Judge Zoss provided the parties with a draft of his Report And Recommendation several weeks before the oral arguments.[2] Judge Zoss filed a final version of his Report And Recommendation (docket no. 26) just hours after the oral arguments. Judge Zoss states in that final version that there are no substantive differences between the final version and the draft that he provided to the parties. *See* Report And Recommendation at 2 n.1.

## 2. *The Report And Recommendation*

In his Report And Recommendation, Judge Zoss recounted almost all of the portions of the rulings of the Iowa courts that I have quoted above, and a great many more that pertain to claims on which Powell has offered no objection. Judge Zoss also noted that, at the oral arguments on Powell's § 2254 Petition, Powell and his counsel clarified that Powell is claiming that the state post-conviction relief court either unreasonably applied the law to the facts or unreasonably determined the facts in light of the evidence, within the meaning of 28 U.S.C. § 2254(d)(1) and (d)(2), respectively. After considering all four of Powell's claims, Judge Zoss recommended that Powell's § 2254 Petition be denied in its entirety.

More specifically, as to Powell's claim of ineffective assistance during plea negotiations, the only claim at issue in Powell's later Objection (docket no. 27), Judge Zoss's analysis was as follows:

---

[2]Although counsel for Powell and counsel for the respondent represented at the oral arguments that they had received and reviewed the draft Report And Recommendation, Powell, who also participated, stated that he did not believe that he had received it.

Powell claims his trial counsel was ineffective in not giving him correct advice during plea negotiations concerning the time he would have to serve in prison if he were convicted on the attempted murder charge. He claims he would have accepted a plea bargain to a lesser charge if he had known he would have to serve 70 percent of the mandatory twenty-five-year sentence on the charge. Doc. No. 18, p. 16.

The PCR court ruled on this claim as follows: "Mr. Powell claims that [trial counsel] failed to inform him that there was a 70 percent mandatory minimum on a 25-year sentence for attempted murder and suggests that he would have changed plea bargain position had he known that fact. While the court believes there is evidence that Mr. Powell did know that there was a 70 percent mandatory minimum, his attitude towards plea bargaining was totally unreasonable and the court concludes it would have made no difference. He thus was not prejudiced by any failure that there may have been." Doc. No. 19-1 at 21-22.

To prevail on this claim, Powell would have to show either that this ruling was based on an unreasonable determination of the facts in light of the evidence, or it involved an unreasonable application of the law to the facts. He has not made either of these showings.

There is no evidence in the record to support a claim that Powell would have accepted a plea bargain had he been given more information concerning the mandatory sentence on the attempted murder charge, nor does the record establish that the [post-conviction relief] court was objectively unreasonable in finding no prejudice on this claim.

Report And Recommendation at 16-17.[3]

---

[3]Judge Zoss references the docket pages of docket no. 19-1, while I have used the consecutive page numbers indicated by the respondent in the Appendix Of Relevant State Court Decisions.

### *3.  Powell's objection*

On March 1, 2011, Powell mailed, and on March 3, 2011, the Clerk of Court received and filed, his *pro se* Objection (docket no. 27) to Judge Zoss's Report And Recommendation.[4]  Powell objects only to Judge Zoss's recommended disposition of his third claim for relief, his claim that trial counsel was ineffective in failing to advise him during plea negotiations of the 70 percent mandatory minimum sentence for the attempted murder charge.  In essence, Powell contends that the respondent wants the court to believe that, even if he knew of the 70 percent mandatory minimum, he was not willing to accept a plea agreement, so that he was not prejudiced by any ineffective assistance of counsel in failing to advise him of the mandatory minimum.  However, Powell asserts that trial counsel did not advise him of the 70 percent mandatory minimum; that certain evidence shows that he would have been willing to plead guilty, had he known about the mandatory minimum; and that his April 19, 2005, letter, which the state courts relied upon in rejecting this claim for post-conviction relief, was written prior to any plea negotiations with the state, so that he did not then know what the state would offer.

Somewhat more specifically, Powell argues,

> The difference between a 9 year mandatory [sentence, as purportedly offered by the prosecution,] and a regular 25 year sentence is huge.  A regular 25 year sentence you discharge in 10 years, but are eligible for parole after 1 year. So why would I plea[d] and not take a chance at trial, I would do less time if found guilty unless I discharge and that is only 12 months more. . . .  Once again if [sic] knowing there was a mandatory on the 25 year sentence of 17½ years to minimum parole and 22 years to discharge is huge compared to a 9 years

---

[4]Powell's appointed counsel did not file any objections to the Report And Recommendation.

> mandatory. I believe that this shows by a preponderance of
> the evidence that Mr. Goldsmith breached an essential duty
> and that I was prejudiced by his actions.

Petitioner's *pro se* Objection at 3. In short, Powell argues that he was prejudiced by trial

counsel's failure to advise him of the potential for a mandatory minimum sentence that was

70 percent of the maximum 25-year sentence for the attempted murder charge, because,

had he known about it, he would have accepted a guilty plea to a sentence less than 17½

years (70 percent of the 25 year sentence for attempted murder).

## II. LEGAL ANALYSIS

### A. Standards For Review Of A Report And Recommendation

The district court's standard of review for a magistrate judge's report and

recommendation is established by statute:

> A judge of the court shall make a de novo determination of
> those portions of the report or specified proposed findings or
> recommendations to which objection is made. A judge of the
> court may accept, reject, or modify, in whole or in part, the
> findings or recommendations made by the magistrate judge.
> The judge may also receive further evidence or recommit the
> matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R. CIV. P. 72(b) (stating identical requirements);

N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge

but not articulating any standards to review the magistrate judge's report and

recommendation). The United States Supreme Court has explained this statutory standard,

as follows:

> Any party that desires plenary consideration by the Article III
> judge of any issue need only ask. Moreover, while the statute
> does not require the judge to review an issue *de novo* if no

> objections are filed, it does not preclude further review by the
> district judge, *sua sponte* or at the request of a party, under a
> *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

Thus,

- A district court *may* review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* This discretion to conduct *de novo* review of any issue at any time makes sense, because the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994).

- If a party files an objection to the magistrate judge's report and recommendation, the district court *must* "make a de novo determination of *those portions* of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (emphasis added). In most cases, to trigger *de novo* review, "objections must be timely and specific," *Thompson v. Nix.*, 897 F.2d 356, 358-59 (8th Cir. 1990): however, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and has also been willing to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the

district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)).

- In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (section 636(b)(1) "provide[s] for de novo review *only* when a party objected to the magistrate's findings or recommendations" (emphasis added)); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived his right to *de novo* review [of a magistrate judge's report and recommendation on a suppression motion] by the district court."). Indeed, *Thomas* suggests that no review at all is required. *Id.* ("We are therefore not persuaded that [section 636(b)(1)] requires some lesser review by the district court when no objections are filed.").

  Nevertheless, the Eighth Circuit Court of Appeals has indicated that a district court should review the portions of a magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only

satisfy itself that there is no clear error on the face of the record"). Review for clear error, even when no objection has been made, is consistent with "retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk*, 15 F.3d at 815.

Although the Eighth Circuit Court of Appeals has not explained precisely what "clear error" review means in this context, in other contexts, the Supreme Court has stated that the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The court will review Judge Zoss's Report And Recommendation with these standards in mind. Although there was no evidentiary hearing in this case that would have required me to listen to any recording or to review a hearing transcript, *see Azure*, 539 F.3d at 910, I have listened to the recording of the February 18, 2011, oral arguments on Powell's § 2254 Petition.

### B. Standards For § 2254 Relief

Any such review in this case must be in the context of the standards for federal *habeas* relief to a state prisoner pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Section 2254(a) states,

[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in

> custody in violation of the Constitution . . . of the United States.

28 U.S.C. § 2254(a). Section § 2254(d) further limits the circumstances in which a federal court can grant relief to a state prisoner on a claim previously adjudicated by a state court, as is the case here:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court has explained when relief pursuant to § 2254(d)(1) is appropriate, as follows:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor,* 529 U.S. 362, 404-05 (2000) (quoting 28 U.S.C. § 2254(d)(1)). In this case, Powell and his counsel clarified that, in the first instance, they are claiming that the state post-conviction relief courts unreasonably applied the law to the facts, within the meaning of the second alternative under § 2254(d)(1).[5]

An "unreasonable application" of federal law by a state court can occur in two ways: (1) where "the state court identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (2) where "the state court either unreasonably extends a legal principle from [Supreme] Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. The federal court cannot grant relief simply because, in the federal court's view, the state court applied clearly established federal law erroneously or incorrectly—the application must additionally be *unreasonable*. *Id.* at 411; *see Bell v. Cone,* 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ("an unreasonable application is different from an incorrect one."). Stated differently, a federal court may not grant the petition unless the state court decision, viewed objectively and on the merits, cannot be justified under existing Supreme Court precedent. *James v. Bowersox,* 187 F.3d 866, 869 (8th Cir. 1999).

In this case, Powell and his counsel also assert that the state post-conviction relief courts unreasonably determined the facts in light of the evidence, within the meaning of

---

[5]The "contrary to" alternative of § 2412(d)(1), which is not at issue here, requires the state court decision to be "diametrically different" or "opposite in character or nature," or "mutually opposed" to Supreme Court precedent, that is, "the state court's decision must be substantially different from the relevant precedent of [the Supreme] Court." *Williams*, 529 U.S. at 405.

§ 2254(d)(2), which authorizes relief when the state court's adjudication "resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence* presented in the State court proceeding." (Emphasis added). The Supreme Court has explained that, when this ground for relief is invoked, federal courts "presume the [state] court's factual findings to be sound, unless [the petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting § 2254(e)(1)); *Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011). "The standard is demanding but not insatiable; as we said the last time this case was here, '[d]eference does not by definition preclude relief.'" *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). As the Eighth Circuit Court of Appeals has explained, "'[A] state court decision involves "an unreasonable determination of the facts in light of the evidence presented in state court proceedings" only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.'" *Worthington v. Roper*, 631 F.3d 487, 508 (8th Cir. 2011) (quoting *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004), with citation omitted)).

### C. Powell's Claim Of Bad Advice Regarding Plea Negotiations

Again, Powell objects only to Judge Zoss's recommendation that I reject his claim for § 2254 relief based on alleged ineffective assistance of trial counsel in failing to advise him during plea negotiations of the potential for a 70 percent mandatory minimum sentence on the attempted murder charge. Powell asserts that additional evidence, which is not mentioned in the Iowa courts' post-conviction relief decisions, shows that he would have been willing to accept a plea agreement to plead guilty to attempted murder, if properly advised.

## 1. *Powell's additional evidence*

Powell identifies the additional evidence that he believes shows his willingness to plead guilty to the attempted murder charge, if properly advised, as follows:

> [I]f you read in the 3rd paragraph of [the] same [April 19, 2005,] letter [Exhibit No. 115] it says "But instead of a proposed plea agreement in my last letter to you" shows that even though I said I'm not taking a 5, 10 [or] a 25 year sentence, I have reached out to the State on plea negotiations prior to (Exhibit No. 115) [the April 19, 2005, letter] and also again in a letter from Mr. Goldsmith to Mr. Powell dated June 14th 2005 which was used as the (Defendants [sic] Exhibit 109) in Case No. PCCV03573. In paragraph 4 "You also outlined a potential plea bargain" which this letter was written nearly 2 months after exhibit No. 115 which shows that even after I wrote the letter in exhibit No. 115, I was still trying to come up w/a plea deal. In paragraph 4, page 2 of exhibit 109 is where he outlines the States [sic] plea agreement again and this is where the prejudice begins by not knowing the 25 year sentence had a 70 % mandatory minimum.

Petitioner's *pro se* Objection (docket no. 27) at 2-3. Powell also adds, "Also in paragraph 5, page #2 [of the June 9, 2005, letter] there is nothing mentioned of a mandatory." *Id.* at 3.

I note, first, that the June 14, 2005, letter to which Powell directs my attention does not appear to be Defendant's Exhibit No. 109 in Powell's state post-conviction relief case. Exhibit No. 109 in those proceedings was identified in the transcript of proceedings as his October 17, 2005, complaint against Mr. Goldsmith. Because the state court materials provided to the federal court do not include all of the exhibits from the post-conviction relief proceedings, I cannot determine whether the June 14, 2005, letter was attached to the complaint against Mr. Goldsmith. I have also reviewed the transcript of the post-conviction relief proceedings, and I did not locate any reference to the June 14, 2005,

letter.  I can state, however, that the June 14, 2005, letter *was* included as item 2 in the Appellant's Appendix on appeal of denial of post-conviction relief, at pages 83-84, where it bears a "Defendant's Exhibit" sticker that is cut off above the exhibit number.  I can also determine that there is no mention of the June 14, 2005, letter, in Powell's counsel's brief in support of Powell's § 2254 Petition, no mention of the letter during the oral arguments before Judge Zoss on Powell's § 2254 Petition, and no indication in Judge Zoss's Report And Recommendation that he was specifically informed of or considered the June 14, 2005, letter.  On the other hand, Powell himself did argue in the course of oral arguments before Judge Zoss that the April 19, 2005, letter was written before any plea offer had been received from the prosecution.

The June 14, 2005, letter—from Powell's trial attorney to Powell, in response to a letter from Powell dated June 6, 2005—states, in pertinent part (as identified by Powell), the following:

> You also outlined a potential plea bargain.  I had discussed this type of plea bargain previously with the County Attorney.  I had asked if he would agree to you pleading guilty to multiple "D" felonies, having your sentence suspended, pleading to an aggravated misdemeanor and going to prison for two years.  As I wrote to you previously, the County Attorney said to tell you that his response was a laugh.
>
> * * *
>
> As you recall, the County Attorney's plea bargain was for 3 five year sentences, each with a minimum of 3 years.  This would mean a total jail sentence of 15 years.  I am not sure if he meant to offer a minimum of 3 years or a minimum of 9 years.  If you want to discuss a reduction from his plea bargain, it is possible that he might agree to drop the minimum.  After you consider good time, and credit for time served, you probably would serve 1/3, or less, of the 15 year sentence.  In fact, a possible plea bargain might even be to

agree to a 15 year sentence with 1 three year minimum.  On a 15 year sentence the minimum served probably would be in the range of 2 to 3 years anyway.  An additional consideration would be agreement that the time served applies to the 3 year minimum.

I don't want you to think I am giving up or trying to talk you into a plea bargain.  However, I just want to make sure that we review all of your options.  You are facing a 25 year sentence on the "B" felony.  In addition, if you are convicted on the "B" felony and other charges, the Judge could run them consecutive, which would increase your prison to 30 years or more.  Compared to that, a 15 year sentence, that actually gets you out in approximately 3 to 5 years, needs serious consideration.

Post-Conviction Relief Appeal Appendix at 83-84.

### 2.    *Analysis*

Upon *de novo* review of the claim of ineffective counsel in failing to advise Powell of the potential for a 70 percent mandatory minimum for attempted murder in the course of plea negotiations, the focus of Powell's *pro se* objection to the Report And Recommendation, *see* 28 U.S.C. § 636(b)(1); *Thomas*, 474 U.S. at 154, I ultimately agree with Judge Zoss's recommendation that the claim be denied.  My process for reaching that conclusion is somewhat different from Judge Zoss's, in light of Powell's *pro se* objection. I begin with Powell's argument that the state courts "unreasonably determined" the facts in light of the evidence, within the meaning of § 2254(d)(2), then turn to his argument that the state courts "unreasonably applied" governing Supreme Court law to those facts, within the meaning of § 2254(d)(1).

### a.    *Unreasonable factual determinations*

The factual findings that Powell appears to challenge as unreasonable determinations, or at least, the ones that provide the basis for the Iowa courts' legal

analysis of Powell's claim that counsel provided bad advice in plea negotiations, are that "it is clear from [Powell's] own testimony, from his communications and from the evidence presented by Mr. Goldsmith, that Mr. Powell was simply ignoring the advice that was being given to him," *see* State Court Decisions at 16; that Powell's "attitude towards plea bargaining was totally unreasonable," *see id.* at 19; and that there is evidence both that trial counsel did not advise Powell as to the potential for a mandatory minimum sentence for attempted murder and that trial counsel did do so, but that "there is no credible evidence of . . . the breach of essential duty" in this regard, *see id.* at 25. As noted above, this court must presume that these findings are correct, unless Powell rebuts that presumption "'by clear and convincing evidence.'" *Miller-El*, 545 U.S. at 231 (quoting § 2254(e)(1); *Stenhouse*, 631 F.3d at 891. Thus, Powell must show that these factual findings "do not enjoy support in the record." *Worthington*, 631 F.3d at 508 (internal quotation marks and citations omitted). He cannot make the necessary showing as to any of the pertinent findings.

Both the April 19, 2005, letter from Powell to his trial attorney, cited by the Iowa courts, and the June 14, 2005, letter from his trial attorney to Powell, upon which Powell now relies, and which was available to the Iowa Court of Appeals in the appendix for the post-conviction relief appeal, reasonably support a finding that Powell was simply ignoring the advice that he was being given about the need to consider a plea agreement. Both also reasonably support a finding that Powell's position with regard to a plea agreement—which it appears from the June 14, 2005, letter was that he still wanted a sentence of two years—was totally unreasonable. The Iowa courts could have reasonably concluded that both letters show that Powell's trial counsel was floating much more realistic numbers, from 5 to 15 years, as the basis for a plea agreement, in light of the charges and the potential sentences, but Powell was rejecting those suggestions out of hand. Moreover,

the appendix on appeal of denial of post-conviction relief includes a copy of an e-mail dated May 20, 2005, from the county attorney to Powell's trial counsel, outlining a plea agreement that did *not* include a guilty plea to attempted murder, but did include agreement to consecutive 5-year sentences for eluding, assault on a peace officer, and second degree theft, totaling 15 years, with a requirement that Powell serve a mandatory minimum of three years as an habitual offender. *See* Post-Conviction Relief Appeal Appendix at 131-32 (also marked "Defendant's Exhibit 106"). On that e-mail, Powell has written, above his signature, "I reject this plea bargain offer," with the date "05/25/05." Thus, by June 14, 2005, when Powell *had* received a plea offer from the prosecution, he still was not considering a more reasonable plea position.[6] Powell's contention, in these proceedings, that his April 19, 2005, letter only shows his position before any plea offer from the prosecution, and thus is irrelevant, is undermined by Powell's continued adherence to the same position with regard to a plea agreement after he did receive a plea offer from the prosecution. In the face of such a plea offer, Powell's continued insistence on a sentence of two years, as outlined in the June 14, 2005, letter upon which he now relies, was unreasonable, by almost anyone's estimation.

The appendix for the post-conviction relief appeal also included a letter from trial counsel to Powell that is dated September 6, 2005, that is, *after* Powell's conviction on August 29, 2005, and before his sentencing, pointing out that "[w]e have to accept that you are going to receive a twenty-five year sentence, at the sentencing in October," but referring to a plea agreement *for sentencing purposes*, that would potentially have involved considerably less time. *Id.* at 85-86. It also contains a letter from trial counsel to Powell

---

[6]That plea offer was objectively reasonable, even if trial counsel's cautious interpretation of it as requiring a 9-year mandatory minimum (3-year mandatory minimums on each of three offenses, served consecutively), was the correct one.

dated September 22, 2005, indicating that trial counsel had told the county attorney that "we would accept the plea bargain," *see id.* at 135 (also marked "Defendant's Exhibit 112"), but there ultimately was no plea agreement, even for sentencing purposes.

Certainly, based on the record evidence, it was not unreasonable for the Iowa courts to find that Powell's position with regard to a plea bargain was "unreasonable" in light of the facts. *Worthington*, 631 F.3d at 508 (the petitioner must show that these factual findings "do not enjoy support in the record").

Nor can the court find that the Iowa courts unreasonably determined that trial counsel *did* advise Powell of the mandatory minimum sentence for attempted murder, at least to the extent that such a finding is implicit in the Iowa courts' finding that trial counsel did not breach an essential duty as to plea negotiations. The appellate record also included a letter from trial counsel to Powell that is dated September 21, 2005, prior to sentencing, reminding Powell that the mandatory minimum sentence for attempted murder was "our concern." Post-Conviction Relief Appeal Appendix at 87. While the record evidence, in its entirety, may be somewhat equivocal, and I might have reached a different conclusion, I cannot say that the Iowa courts' factual determination that trial counsel did advise Powell of the mandatory minimum sentence, or that there is no credible evidence that he did not, does not enjoy at least some support in the record. *Worthington*, 631 F.3d at 508.

Powell is not entitled to relief on his claim of bad advice in plea negotiations based on unreasonable determinations of underlying facts by the Iowa courts.

### b.    *Unreasonable application of the law*

Similarly, I cannot conclude that there has been any "unreasonable application" of federal law by the state post-conviction relief courts, within the meaning of the second alternative in § 2254(d)(1). First, the state courts correctly identified the governing legal

rule from *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams*, 529 U.S. at 407 (explaining the "unreasonable application" alternative); *see also Powell II*, 2009 WL 3380640 at *1 (state appellate decision on post-conviction relief, citing *Strickland* and *Thompson v. State*, 492 N.W.2d 410-413 (Iowa 1992), in turn citing *Jones v. State*, 479 N.W.2d 265, 271-72 (Iowa 1991), in turn citing *Strickland*); *id.* at 13 (district court's decision on post-conviction relief citing *Jones*);[7] and *id.* at 22 (same citing *Strikland*).

Second, the state courts did not "unreasonably appl[y] [the governing law] to the facts of the particular prisoner's case." *Williams*, 529 U.S. at 407. Specifically, it was not unreasonable for the Iowa courts to rely primarily or exclusively on their analysis of the "prejudice" prong of this ineffective assistance of counsel claim. The Supreme Court has made clear that the reviewing court need only consider one of the twin requirements for relief on an ineffective assistance of counsel claim—"deficient performance" or "prejudice"—if it is dispositive of the claim. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 697 (1984); *Knowles v. Mirzayance*, ___ U.S. ___, 129 S. Ct. 1411, 1419 (2009). Indeed, the Iowa Court of Appeals expressly noted, "We may dispose of an ineffective-assistance-of-counsel claim if the applicant fails to meet either the breach of duty or prejudice prong," citing *Strickland*, 466 U.S. at 697, and properly formulated the required showing of "prejudice" as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," citing *Strickland*, 466 U.S. at 698. *Powell II*, 2009 WL 3380640 at *1.

Nor did the Iowa courts make an unreasonable application of the correct legal rule to the facts of Powell's case, *see Williams*, 529 U.S. at 407, when they concluded that

---

[7] The Iowa District Court miscited *Jones* as 497 N.W.2d 265, when it is 479 N.W.2d 265, and misattributed the decision to the Iowa Court of Appeals, when it is an Iowa Supreme Court decision. State Court Decisions at 13.

Powell could not show the required prejudice. Powell faults the Iowa courts for relying on his April 19, 2005, letter as showing that he suffered no prejudice from any deficient performance by trial counsel with regard to plea negotiations, because that letter was purportedly written before the prosecution had made any plea offer. The record shows, however, that the Iowa courts could reasonably have concluded that Powell's position, as stated in the April 19, 2005, letter, did not change, and would not have changed, based on either a specific plea offer by the prosecution or advice from trial counsel about the mandatory minimum sentence for attempted murder. The Iowa courts had before them evidence that Powell had staked out an unrealistic and unreasonable position with regard to an acceptable sentence, despite advice that such a position would never satisfy the prosecution. They also had before them Powell's rejection, on May 25, 2005, before trial, of a plea offer that did not require him to plead guilty to attempted murder at all, thus removing the mandatory minimum sentence or the potential maximum sentence for that offense, and offering consecutive five-year sentences for the three remaining charges in that case, with an agreement to "a minimum sentence of confinement of three years." *See* Post-Conviction Relief Appeal Appendix at 131-32. Finally, the Iowa courts had evidence that, even after Powell was convicted of attempted murder, he continued to resist any plea agreement for sentencing purposes. *See id.* at 85-86.

The Iowa courts also recognized that, from Powell's perspective in late 2008, after conviction and sentencing, he might now believe that he would have changed his mind and accepted a plea agreement, if his trial counsel had not performed deficiently, but that was not his position at the time that he was charged, tried, convicted, and sentenced. Powell's arguments that he would certainly have accepted a plea agreement if properly advised are no less revisionist now than they were at the end of 2008.

Even were I persuaded that the Iowa courts got it wrong—which I am not—I am not persuaded that their application of the law to these facts was *unreasonable*. *See Strickland*, 466 U.S. at 411; *Bell*, 535 U.S. at 694. I simply cannot say that, viewed objectively and on the merits, the application of the law to the facts by the Iowa courts—their conclusion that there was no reasonable probability that Powell would have accepted a plea agreement even if properly advised about the potential mandatory minimum sentence for attempted murder—cannot be justified under existing Supreme Court precedent. *James*, 187 F.3d at 869.

### D. Powell's Other Claims

Powell's other claims for federal *habeas* relief in his § 2254 Petition were (1) ineffective assistance of trial counsel in failing to move for a judgment of acquittal, *see* Petitioner's Brief at 10; (2) ineffective assistance of trial counsel in failing to move for a change of venue, *see id.* at 12; and (3) ineffective assistance of trial counsel in failing to retain an expert witness to establish that the brakes on the pickup truck were defective, *see id.* at 16. Judge Zoss recommended that these claims also be denied. Powell raised no objections to the recommended disposition of these claims, so my review of Judge Zoss's recommendation is only for "clear error." *See Grinder*, 73 F.3d at 795 (noting that, when no objections are filed and the time for filing objections has expired, the district court "would only have to review the findings of the magistrate judge for clear error"); FED. R. CIV. P. 72(b), 1983 advisory committee note (stating, "[W]hen no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). My review of Judge Zoss's recommended disposition of these additional claims for § 2254 relief reveals no such "clear error." Indeed, I am left with the same conviction that Judge Zoss was, that the Iowa courts' disposition of these claims was

correct. *Compare Anderson*, 470 U.S. at 573-74 ("clear error" is present when the reviewing court "is left with the definite and firm conviction that a mistake has been committed" (quotation marks and citations omitted)).

## E. Certificate Of Appealability

My agreement with Judge Zoss's recommendation that Powell's § 2254 Petition be denied in its entirety raises the question of whether or not to grant Powell a certificate of appealability on any of his claims for § 2254 relief. The requirement of a certificate of appealability is set out in 28 U.S.C. § 2253(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
> **(A)** the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court. . . .

28 U.S.C. § 2253(c)(1)(A); *accord* FED. R. APP. P. 22(b). In *Tiedeman v. Benson*, 122 F.3d 518 (8th Cir. 1997), the Eighth Circuit Court of Appeals held that "judge" in this provision "must include district judges," so that, "under AEDPA district courts possess the authority to issue certificates of appealability under Section 2253(c) and Fed. R. App. P. 22(b)." *Tiedeman*, 122 F.3d at 522.

To obtain a certificate of appealability on claims for § 2254 relief, a defendant must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v.*

*Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

For the reasons stated in this opinion, I find that Powell has not made a substantial showing of the denial of a constitutional right on his § 2254 claims. *See* 28 U.S.C. § 2253(c)(2). Specifically, there is no showing that reasonable jurists would find my assessment of Powell's claims to be debatable or wrong, *Miller-El*, 537 U.S. at 338; *Cox*, 133 F.3d at 569, or that any court would resolve those issues differently. *Cox*, 133 F.3d at 569. Therefore, Powell does not make the requisite showing to satisfy § 2253(c) on his claims for relief, and no certificate of appealability will issue in this case. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b).

Therefore, a certificate of appealability will also be denied.


### III. CONCLUSION

Upon *de novo* review of Judge Zoss's recommendation to deny Powell's claim for § 2254 relief based on bad advice of trial counsel in plea negotiations, I **overrule** Powell's March 3, 2011, *pro se* Objection (docket no. 27), and **accept** the pertinent part of Judge Zoss's February 18, 2011, Report And Recommendation (docket no. 26). Upon "clear error" review of Judge Zoss's recommendation to deny all of Powell's other claims for

§ 2254 relief, to which Powell did not object, I also **accept** the pertinent parts of Judge Zoss's February 18, 2011, Report And Recommendation (docket no. 26).

THEREFORE, Powell's January 29, 2010, *pro se* Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody (docket no. 1), as clarified by counsel, is **denied in its entirety**. A certificate of appealability is also **denied.**

**IT IS SO ORDERED.**

**DATED** this 21st day of April, 2011.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA